Jason Kuller, NV Bar No. 12244
Ciara Alagao, NV Bar No. 16789
**RAFII & ASSOCIATES, P.C.**
1120 N. Town Center Dr., Ste. 130
Las Vegas, Nevada 89144
Telephone: 725.245.6056
Facsimile: 725.220.1802
Email: jason@rafiilaw.com
Email: ciara@rafiilaw.com
*Attorneys for Plaintiff*

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MERCEDES RUIZ, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>ATKINSON WATKINS & HOFFMANN LLP, d/b/a BATTLE BORN INJURY LAWYERS; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:26-cv-1810<br><br>**CLASS AND COLLECTIVE ACTION**<br><br>**COMPLAINT FOR:**<br><br>1. Failure to Pay Overtime in Violation of the FLSA, 29 U.S.C. § 207;<br>2. Failure to Pay Wages for Each Hour Worked in Violation of NRS 608.016;<br>3. Failure to Pay Overtime in Violation of NRS 608.018;<br>4. Failure to Timely Pay All Wages Due and Owing at Separation in Violation of NRS 608.020-050;<br>5. Unjust Enrichment; and<br>6. *Quantum Meruit*.<br><br>**JURY TRIAL DEMANDED** |

Plaintiff MERCEDES RUIZ (**"Plaintiff"** or **"Ms. Ruiz"**), individually and on behalf of all others similarly situated, by and through her attorneys of record, Rafii & Associates, P.C., hereby alleges as follows:

1. This is a class and collective action for unpaid wages and overtime, liquidated damages, restitution, statutory waiting-time penalties, attorneys' fees, costs, and interest under the Nevada Revised Statutes (**"NRS"**), the federal Fair Labor Standards Act (**"FLSA"**), 29 U.S.C. § 201 *et seq.*, and Nevada common law.

2. Plaintiff brings this action against Defendant Atkinson Watkins & Hoffmann LLP, d/b/a Battle Born Injury Lawyers (**"Battle Born,"** the **"Firm,"** or **"Defendant"**), a Nevada personal-injury law firm that systematically misclassified its legal support staff—including claims assistants, legal assistants, and paralegals—as exempt from overtime, paid them a flat salary regardless of the hours they actually worked, and thereby deprived them of overtime compensation, wages for each hour worked, and other wages due under state and federal law.

3. All allegations in this Complaint are based on information and belief except for those allegations pertaining specifically to Plaintiff, which are based on Plaintiff's personal knowledge. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

**PARTIES**

4. At all relevant times, Plaintiff MERCEDES RUIZ was a natural person residing and working in Clark County, Nevada. Ms. Ruiz was employed by Defendant as a salaried Claims Assistant from on or about January 23, 2023, until on or about July 14, 2023, and was at all times misclassified as exempt from overtime.

5. At all relevant times, Defendant ATKINSON WATKINS & HOFFMANN LLP, d/b/a Battle Born Injury Lawyers, was and is a Nevada domestic limited-liability partnership registered and licensed to do business under the laws of the State of Nevada, Entity No. E0066712010-9, Nevada Business ID No. NV20101119331, formed on or about January 28, 2010. Battle Born is a personal-injury law firm with its principal place of business at 10789 W. Twain Avenue, Suite 100, Las Vegas, Nevada 89135. "Battle Born Injury Lawyers" is a registered trade name (Mark No. 202300048103-34) owned by Atkinson Watkins & Hoffmann LLP and used in the advertising and marketing of the Firm's legal services.



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

6. The identities of Does 1 through 50 (**"Doe Defendants"**) are unknown at this time, and this Complaint will be amended at such time as Plaintiff learns of their identities. Plaintiff is informed and believes, and thereon alleges, that each of the Doe Defendants is responsible in some manner for the acts, omissions, or representations alleged herein.

7. Any reference in this Complaint to **"Defendant," "Defendants," "Doe Defendants," "Battle Born,"** or the **"Firm"** shall mean "Defendants and each of them."

8. **"Nevada Class Members"** (or the **"Nevada Class"**) are all current and former nonexempt legal support staff—including, without limitation, claims assistants, legal assistants, paralegals, and other similarly situated office staff—employed by Defendant in the State of Nevada at any time during the four-year period (the **"Class Period"**) preceding the filing of this Complaint, until the entry of judgment after trial.

9. **"FLSA Collective Members"** (or the **"FLSA Collective"**) are all current and former nonexempt legal support staff—including, without limitation, claims assistants, legal assistants, paralegals, and other similarly situated office staff—employed by Defendant at any time during the three-year period (the **"FLSA Period"**) preceding the filing of this Complaint, until the entry of judgment after trial. The three-year period applies because Defendant's violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a).

10. Nevada Class Members and FLSA Collective Members are collectively referred to herein as **"Class Members."**

## JURISDICTION AND VENUE

11. Plaintiff incorporates and realleges all paragraphs above.

12. This Court has original subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because that claim arises under the laws of the United States, namely the Fair Labor Standards Act, 29 U.S.C. § 201 et seq..

13. This Court further has jurisdiction over Plaintiff's collective-action claim under the FLSA pursuant to 29 U.S.C. § 216(b), which provides that an action to recover the liability prescribed by the FLSA "may be maintained against any employer … in any Federal or State court of competent

jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."

14. This Court has supplemental jurisdiction over Plaintiff's Nevada state-law and common-law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to Plaintiff's federal claim that they form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state-law claims derive from the same common nucleus of operative fact—Defendant's firm-wide policy of misclassifying its nonexempt legal support staff as exempt and failing to compensate them for all hours worked, including overtime.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this district and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district. Defendant maintains its principal place of business at 10789 W. Twain Avenue, Suite 100, Las Vegas, Nevada 89135, which is within the District of Nevada, and Plaintiff was employed by Defendant at that location.

## FACTUAL ALLEGATIONS

16. Plaintiff incorporates and realleges all paragraphs above.

### A. Ms. Ruiz's Hiring and Classification as a Salaried "Claims Assistant"

17. On or about January 17, 2023, Plaintiff submitted an employment application to Battle Born for the position of Claims Assistant, listing a desired rate of $26–$28 per hour and availability of "anytime."

18. On or about January 18, 2023, Battle Born sent Plaintiff a welcome email scheduling her onboarding for Monday, January 23, 2023, at 9:00 a.m. On or about January 20, 2023, Battle Born notified its staff that Plaintiff would begin as a new Claims Assistant on Monday, January 23, 2023.

19. Plaintiff's date of hire with Battle Born was recorded as January 23, 2023. On or about January 23, 2023, Plaintiff completed orientation paperwork, with employee and witness dates recorded as January 23, 2023, and Plaintiff and Battle Born executed an Employment Agreement hiring Plaintiff as a Claims Assistant.

20. According to the Employment Agreement, Plaintiff's duties as a Claims Assistant included answering and directing incoming calls; meeting and greeting clients; drafting, editing, and

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

sending correspondence to clients and third-party institutions; preparing and responding to written correspondence; calendaring; billing; and other duties as assigned by Battle Born.

21. Plaintiff's supervisor was listed as Andrea Pimentel, and her assigned work location was 10789 W. Twain Avenue, Suite 100, Las Vegas, Nevada 89135. Plaintiff's employment was subject to a probationary completion date of March 23, 2023, and a benefit-eligibility date of April 1, 2023.

22. None of Plaintiff's duties qualified her as exempt from overtime under the FLSA or Nevada law. Plaintiff did not perform work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; she did not customarily and regularly exercise discretion and independent judgment with respect to matters of significance; and she did not manage the enterprise or any customarily recognized department or subdivision thereof.

23. Specifically, under the FLSA, legal assistants and paralegals are ***not*** exempt from minimum-wage and overtime requirements. *See, e.g.*, 29 C.F.R. § 541.301(e)(7) ("Paralegals and legal assistants generally do not qualify as exempt learned professionals because an advanced specialized academic degree is not a standard prerequisite for entry into the field."). Ms. Ruiz was therefore ***misclassified*** as exempt by Defendant.

**B. Defendant Paid Ms. Ruiz a Flat Salary Regardless of Hours Worked**

24. The Employment Agreement set Plaintiff's compensation at "an annual salary of $39,520.00," with eligibility for a discretionary bonus payable on December 15 if she remained employed. An Employee Information form likewise recorded Plaintiff's start date as January 23, 2023, and her salary as $39,520.00 annually.

25. For Plaintiff's first pay period of January 14, 2023, through January 28, 2023, Plaintiff was paid regular wages at $19.00 per hour for 56 hours, totaling $1,064.00 gross. Although her first paystub stated a "Basis of pay: salaried," Plaintiff was in fact paid on an hourly basis—$19.00 per hour—during that first pay period.

26. During each successive pay period, however, Plaintiff was compensated on a salaried basis—i.e., paid the same fixed amount each pay period regardless of the actual number of hours she

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

worked. In contrast with her first paycheck, Plaintiff's remaining paystubs reflected 0.00 hours worked.

27. For the pay periods beginning January 29, 2023, through May 28, 2023, Plaintiff received regular pay of $1,646.67 each pay period. Beginning on or about May 29, 2023, Plaintiff received a pay raise of approximately $10 per week, and for the pay periods of May 29, 2023, through June 28, 2023, Plaintiff received regular pay of $1,666.67 each pay period.

28. A 2023 Form W-2 issued to Plaintiff by Defendant reported $17,570.70 in wages, with federal income tax withheld of $1,245.86, Social Security tax withheld of $1,089.38, and Medicare tax withheld of $254.78. At no time did Defendant pay Plaintiff any overtime compensation.

**C. Defendant's Firm-Wide Policy of Working Support Staff Through Lunch and Over Forty Hours Without Overtime**

29. Throughout her employment in 2023, Plaintiff regularly worked in excess of 40 hours per week. Yet because she was misclassified as exempt and paid on a salaried basis, Plaintiff never qualified for or received overtime pay.

30. Among other things, Battle Born maintained a policy and practice of requiring its legal support staff, including Plaintiff, to work through their 30-minute unpaid meal periods. As a result, Plaintiff and other similarly situated support staff regularly worked at least 8.5 hours each workday—and more than 40 hours each workweek—without being relieved of all duties during their meal periods and without being compensated for that additional working time.

31. Under NRS 608.019(1), an employer shall not employ an employee for a continuous period of eight hours without permitting the employee to have a meal period of at least one-half hour. By requiring Plaintiff and other similarly situated employees to work through their meal periods, Defendant deprived them of a bona fide, duty-free meal break and failed to pay them for the working time during those periods.

32. For example, Plaintiff worked overtime during her final pay period of June 14, 2023, through June 28, 2023, without receiving any overtime pay.

33. In addition to Plaintiff herself, all of Plaintiff's similarly situated coworkers—i.e., legal support staff consisting of claims assistants, legal assistants, paralegals, and other misclassified office

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

staff—consistently worked more than 40 hours per week without overtime pay. This was the product of a firm-wide policy: Defendant paid ***all*** of its legal support staff, including paralegals, on an exempt salaried basis without paying overtime, regardless of the duties they performed or the hours they actually worked.

**D. Defendant's ADP Timekeeping System and Uncompensated "Boot Time"**

34. At all relevant times, Defendant required Plaintiff and other similarly situated employees—regardless of whether they were paid by salary or hourly, and regardless of their purported exempt or nonexempt status—to clock in and out using a computer-based time-tracking program provided by Automatic Data Processing, Inc. ("**ADP**").

35. Although Defendant captured the daily clock-in and clock-out times of Plaintiff and other similarly situated employees through the ADP program, Defendant did not use those clocked-in hours for purposes of paying Plaintiff and other employees. Instead, Defendant paid its salaried support staff a fixed amount each pay period regardless of the hours actually recorded or worked, resulting in the systematic underpayment of Plaintiff and other similarly situated workers.

36. For example, Plaintiff and other similarly situated employees regularly worked through their lunch periods without clocking out, which resulted in approximately 30 minutes of unpaid overtime each such workday.

37. Furthermore, even if Defendant had used the hours tracked by ADP to pay Plaintiff and others, those tracked hours would still not accurately reflect the actual total number of hours worked by employees. That is because it took Plaintiff and other similarly situated employees several minutes to clock into the computer-based ADP timekeeping program, which had to be accomplished before employees could access their other job-required computer programs.

38. Specifically, in order to clock in using ADP, Plaintiff and other employees had to awaken or boot up their computers, log in with a username and password, wait for their desktop systems and processes to load, and then open the ADP timekeeping program or website—which also required a username and password—before finally clocking in (all such time collectively referred to herein as "**Boot Time**").

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

39. Boot Time occurred regularly each workday and could have been recorded or compensated by Defendant without any practical administrative difficulty. The average Boot Time varied but lasted at least a few minutes and could take several minutes more. Because Plaintiff and Class Members regularly worked at least 40 hours per week, practically all Boot Time would be compensable as overtime.

40. Defendant did not compensate Plaintiff or other similarly situated employees for the Boot Time it took employees to begin or resume their workdays.

**E. Defendant's Knowledge and Willfulness**

41. Defendant knew or should have known that Plaintiff and all nonexempt employees—whether paid hourly or by salary—were entitled to receive wages for all time worked, including Boot Time and overtime.

42. Defendant knew or should have known that Plaintiff and other similarly situated employees did not work exactly 80 hours each and every two-week pay period.

43. Defendant—a law firm with presumed knowledge of employment law—knew or should have known that legal support staff, including claims assistants, legal assistants, and paralegals, were not exempt from the federal and state overtime requirements. See 29 C.F.R. § 541.301(e)(7).

44. Defendant had a duty, as well as the financial ability, to compensate Plaintiff and other similarly situated employees for all hours worked under state and federal law, but willfully, knowingly, or recklessly failed to do so in order to save money and increase its profitability.

45. Upon information and belief, Defendant continues to maintain an unlawful firm-wide policy of misclassifying nonexempt legal support staff as exempt and depriving nonexempt employees of their full wages and overtime wages.

**F. Ms. Ruiz's Separation and Defendant's Refusal to Pay**

46. On or about June 26, 2023, Plaintiff submitted a resignation letter to Battle Born stating that her last day would be July 14, 2023, and offering to stay past that date if a replacement was not found. Defendant did not take Plaintiff up on her offer to continue working until a replacement was found, and Defendant did not even allow Plaintiff to continue working during her two-week notice period.

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

47. Plaintiff's final compensation from Defendant was paid by direct deposit on or about June 30, 2023. For her final pay period of June 14, 2023, through June 28, 2023, Plaintiff received regular pay of $1,666.67 for 0.00 recorded hours worked, notwithstanding that she had in fact worked overtime during that pay period.

48. By failing to compensate Plaintiff for all hours worked, including overtime and Boot Time, Defendant failed to timely remit to Plaintiff, at the time of her separation, all wages and compensation she had earned and that were due and owing.

49. To date, Plaintiff and other similarly situated current and former employees have not been paid all wages, overtime wages, or other compensatory and liquidated damages owed by Defendant.

50. Despite a written demand for wages due pursuant to NRS 608.140 sent to Defendant on or about April 8, 2026, Defendant has continued to refuse to pay Plaintiff and other similarly situated employees all wages and damages due and owing within the applicable limitations period. This lawsuit followed.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

51. Plaintiff incorporates and realleges all paragraphs above.

52. Plaintiff brings this action on behalf of herself and on behalf of all Class Members—i.e., the Nevada Class Members and the FLSA Collective Members—as both a class action under Federal Rule of Civil Procedure 23 ("**Rule 23**") and an FLSA collective action under 29 U.S.C. § 216(b).

53. At all relevant times, Plaintiff and Class Members were each an "employee" within the meaning of the FLSA and Nevada law. See NRS 608.010; 29 U.S.C. § 203(e), (g).

54. At all relevant times, Defendant was an "employer" of Plaintiff and Class Members within the meaning of the FLSA and Nevada law. See NRS 608.011; 29 U.S.C. § 203(d), (g).

55. At all relevant times, Defendant did not pay regular wages for each and every hour worked by Plaintiff and Class Members.

56. At all relevant times, Defendant did not compensate Plaintiff and Class Members for Boot Time or for time worked through unpaid meal periods.

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

57. At all relevant times, Defendant did not pay overtime to Plaintiff and Class Members in accordance with state and federal law.

58. Plaintiff reserves the right to modify or redefine the Nevada Class and the FLSA Collective, and to add subclasses, as appropriate based on further investigation, discovery, and theories of liability.

59. The Nevada Class and the FLSA Collective overlap such that members of the Nevada Class may also be members of the FLSA Collective, and vice versa. Plaintiff is a member of both the Nevada Class and the FLSA Collective.

**NEVADA CLASS ALLEGATIONS**

60. Plaintiff incorporates and realleges all paragraphs above.

61. Plaintiff brings the Nevada state-law claims (Counts II through VI) as a class action under Rule 23 on behalf of herself and the Nevada Class. Class treatment of the Nevada Class is appropriate for the following reasons:

a. ***Numerosity***: Nevada Class Members are so numerous that joinder of all members would be impracticable, and the disposition of their claims on a class rather than individual basis will conserve the resources of the parties and the judicial system. While the precise number of Nevada Class Members is unknown at this time, this information can be readily ascertained from Defendant's business and payroll records. Upon information and belief, Defendant employs, or has employed, in excess of 40 Nevada Class Members during the Class Period.

b. ***Commonality***: Common questions of law and fact exist and predominate as to Plaintiff and Nevada Class Members, including, but not limited to:

i. Whether Plaintiff and each Nevada Class Member was an "employee" within the meaning of Nevada law;

ii. Whether Defendant was an "employer" within the meaning of Nevada law;

iii. Whether Defendant misclassified Plaintiff and Nevada Class Members as exempt from overtime;

iv. Whether Defendant failed to pay Plaintiff and Nevada Class Members for each and every hour worked, including time worked through meal periods and Boot Time;

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

v. Whether Defendant failed to pay Plaintiff and Nevada Class Members overtime compensation for each overtime hour worked;

vi. Whether Defendant failed to timely pay Plaintiff and Nevada Class Members all wages due and owing upon separation from employment;

vii. Whether Defendant was unjustly enriched by retaining the value of the uncompensated services performed by Plaintiff and Nevada Class Members;

viii. The reasonable value of the services rendered by Plaintiff and Nevada Class Members for which they were not compensated; and

ix. Whether Defendant's wage-and-hour violations were willful, knowing, or reckless.

c. ***Typicality***: Plaintiff's claims are typical of the claims of Nevada Class Members because Plaintiff and Nevada Class Members were subject to the same employment policies and practices of Defendant during the Class Period and each sustained damages as a result. Proof of a common or single state of facts will establish the right of each Nevada Class Member to recover. For example, Defendant's firm-wide policy and practice of classifying its legal support staff as exempt and paying them a flat salary without overtime—regardless of the hours they actually worked—applied uniformly to Plaintiff and Nevada Class Members alike.

d. ***Adequacy***: Plaintiff will fairly and adequately represent the interests of Nevada Class Members because Plaintiff is herself a Nevada Class Member, shares the same legal and factual issues as Nevada Class Members, and has no interests antagonistic to those of the Nevada Class. Plaintiff has retained legal counsel competent and experienced in class actions, including wage-and-hour and other labor and employment litigation. Plaintiff and her counsel are aware of their fiduciary responsibilities to Nevada Class Members and are determined to discharge those duties diligently by vigorously seeking the maximum possible recovery for Nevada Class Members.

e. ***Superiority***: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Each Nevada Class Member has been damaged and is entitled to recovery by reason of Defendant's unlawful practice of failing to compensate its nonexempt support staff in accordance with Nevada wage-and-hour law. Class treatment will permit a

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense. Because the individual damages of many Nevada Class Members may be relatively modest compared to the expense and burden of individual litigation, it would be impracticable for Nevada Class Members to seek individual redress for Defendant's unlawful conduct. Furthermore, the prosecution of individual lawsuits by each Nevada Class Member would present the risk of inconsistent and contradictory judgments and would establish incompatible standards of conduct for Defendant. Consequently, an important public interest will be served by addressing this matter as a class action.

**FLSA COLLECTIVE ALLEGATIONS**

62. Plaintiff incorporates and realleges all paragraphs above.

63. Plaintiff brings the First Cause of Action under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and all FLSA Collective Members.

64. With regard to conditional certification of the FLSA Collective, Plaintiff is similarly situated to those Collective Members she seeks to represent based on the same factors of commonality, typicality, and adequacy enumerated above. Plaintiff and the FLSA Collective Members were all subject to Defendant's common policy and practice of misclassifying nonexempt legal support staff as exempt and failing to pay them overtime for all hours worked in excess of 40 per workweek.

65. At all relevant times, Plaintiff and each member of the FLSA Collective was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e), (g).

66. At all relevant times, Defendant was an "employer" of Plaintiff and FLSA Collective Members within the meaning of the FLSA, 29 U.S.C. § 203(d), (g).

67. Upon information and belief, Defendant employs, or has employed, in excess of 25 putative members of the FLSA Collective during the FLSA Period.

68. For purposes of providing notice to putative members, the names, addresses, email addresses, and telephone numbers of FLSA Collective Members are readily available from Defendant. Timely notice of the pendency of this collective action, along with a consent-to-join form, can be

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

provided to Collective Members by mail or email and by posting and distributing copies at Defendant's law office.

69. Plaintiff and FLSA Collective Members are entitled to damages in the amount of their respective unpaid overtime compensation, plus an additional equal amount as liquidated damages, as provided by the FLSA. See 29 U.S.C. §§ 207(a), 216(b).

70. Plaintiff consents, and has consented, to sue for violations of the FLSA and to become a member of the FLSA Collective. See 29 U.S.C. §§ 216(b), 256. Plaintiff's written consent to sue is filed concurrently with this Complaint.

71. Plaintiff is informed, believes, and thereon alleges that numerous putative Collective Members will sign and file consents to join this FLSA collective action.

## FIRST CAUSE OF ACTION

### Failure to Pay Overtime in Violation of the FLSA, 29 U.S.C. § 207

### (On Behalf of Plaintiff and the FLSA Collective)

72. Plaintiff incorporates and realleges all paragraphs above.

73. The FLSA provides that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

74. At all relevant times, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, and Plaintiff and FLSA Collective Members were employees engaged in commerce or in the production of goods for commerce.

75. Plaintiff and FLSA Collective Members were not exempt from the overtime requirements of the FLSA. As legal support staff—claims assistants, legal assistants, paralegals, and other office staff—they did not satisfy the requirements of any executive, administrative, professional, or other exemption. See 29 C.F.R. § 541.301(e)(7).

76. At all relevant times, Plaintiff and FLSA Collective Members regularly worked in excess of 40 hours per workweek, including by working through unpaid meal periods and by performing uncompensated Boot Time.

77. At all relevant times, Defendant failed to pay Plaintiff and FLSA Collective Members one and one-half times their applicable regular rate of pay for all hours worked in excess of 40 in any given workweek, in violation of 29 U.S.C. § 207(a)(1).

78. Defendant's failure to pay overtime to Plaintiff and FLSA Collective Members—including Defendant's misclassification of its legal support staff as exempt—was a willful violation of the FLSA. Defendant knew or showed reckless disregard for whether its payroll policies and practices violated the FLSA. Accordingly, the three-year statute of limitations under 29 U.S.C. § 255(a) applies.

79. WHEREFORE, Plaintiff and FLSA Collective Members demand payment by Defendant at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek during the FLSA Period, plus an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b), together with attorneys' fees, costs, and interest as provided by law.

## SECOND CAUSE OF ACTION

**Failure to Pay Wages for Each Hour Worked in Violation of NRS 608.016**

**(On Behalf of Plaintiff and the Nevada Class)**

80. Plaintiff incorporates and realleges all paragraphs above.

81. NRS 608.140 provides that an employee has a private right of action to recover unpaid wages.

82. NRS 608.016 provides that "[a]n employer shall pay to the employee wages for each hour the employee works."

83. "Hours worked" means any time during which the employer exercises "control or custody" over an employee. See NRS 608.011 (defining an "employer" as "every person having control or custody of any employment, place of employment or any employee").



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

84. Pursuant to the Nevada Administrative Code, "hours worked" includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." N.A.C. 608.115(1).

85. Here, Defendant failed to pay Plaintiff and Nevada Class Members for each and every hour worked, including time worked through unpaid 30-minute meal periods and uncompensated Boot Time, beyond the fixed salary amount Defendant paid regardless of actual hours worked.

86. Defendant's compensation system thereby altogether avoided and excluded the actual number of hours worked by Plaintiff and Nevada Class Members, in violation of NRS 608.016, which requires payment for each and every hour worked.

87. WHEREFORE, Plaintiff and Nevada Class Members demand payment by Defendant at their regular hourly rate of pay for each and every hour worked during the Class Period that was not compensated, together with attorneys' fees, costs, and interest as provided by law.

**THIRD CAUSE OF ACTION**

**Failure to Pay Overtime in Violation of NRS 608.018**

**(On Behalf of Plaintiff and the Nevada Class)**

88. Plaintiff incorporates and realleges all paragraphs above.

89. NRS 608.018(1) provides that an employer shall pay one and one-half times an employee's regular wage rate whenever an employee who receives compensation at a rate less than one and one-half times the minimum rate works more than 40 hours in any scheduled workweek, or more than eight hours in any workday unless otherwise provided by statute.

90. NRS 608.018(2) provides that an employer shall pay one and one-half times an employee's regular wage rate whenever an employee who receives compensation at a rate not less than one and one-half times the minimum rate prescribed pursuant to NRS 608.250 works more than 40 hours in any scheduled workweek.

91. The exemptions to NRS 608.018 set forth in NRS 608.018(3), including the exemption for bona fide executive, administrative, and professional employees, do not apply to Plaintiff and Nevada Class Members. As legal support staff, Plaintiff and Nevada Class Members did not satisfy the requirements of any such exemption. See 29 C.F.R. §§ 541.1–541.2; 29 C.F.R. § 541.301(e)(7).

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

92. Here, Plaintiff and Nevada Class Members regularly worked beyond 40 hours per workweek—and, on information and belief, more than eight hours in a workday—without being paid overtime compensation.

93. WHEREFORE, Plaintiff and Nevada Class Members demand payment by Defendant at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek (and, to the extent applicable, in excess of eight hours per workday) during the Class Period, together with attorneys' fees, costs, and interest as provided by law. The regular rate of pay for Plaintiff and Nevada Class Members should be based on all compensation and remuneration received within a given pay period.

## FOURTH CAUSE OF ACTION

### Failure to Timely Pay All Wages Due and Owing at Separation in Violation of NRS 608.020-050

### (On Behalf of Plaintiff and the Nevada Class)

94. Plaintiff incorporates and realleges all paragraphs above.

95. NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

96. NRS 608.030 provides that an employee who resigns or quits must be paid the wages and compensation earned and unpaid at the time of resignation or quitting no later than the day on which the employee would have regularly been paid the wages or compensation, or seven days after the employee resigns or quits, whichever is earlier.

97. NRS 608.040(1) provides that if an employer fails to pay a discharged or resigning employee within the time limits set forth therein, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid, for up to 30 days.

98. NRS 608.050 further grants every employee separated from employment a lien for the purpose of collecting any wages or compensation due and owing, including up to 30 additional days of compensation "without rendering any service therefor."

99. Here, by failing to compensate Plaintiff and those Nevada Class Members separated from employment for all hours and overtime hours worked, as alleged above, Defendant failed to timely remit all wages and compensation due and owing to Plaintiff and such Nevada Class Members at the time of their separation.

100. WHEREFORE, Plaintiff and the Nevada Class Members separated from Defendant's employment demand up to 30 days of additional wages and an employee lien pursuant to NRS 608.040 and NRS 608.050, together with attorneys' fees, costs, and interest as provided by law. Plaintiff and Nevada Class Members also assert a private cause of action to foreclose a lien against Defendant, if necessary, to collect the wages due pursuant to NRS 608.050.

## **FIFTH CAUSE OF ACTION**

### ***Unjust Enrichment***

### **(On Behalf of Plaintiff and the Nevada Class, in the Alternative)**

101. Plaintiff incorporates and realleges all paragraphs above.

102. In the alternative, and only if the Court finds that no enforceable contract governs the compensation owed for the work at issue, Plaintiff asserts this claim for unjust enrichment on behalf of herself and the Nevada Class.

103. Unjust enrichment occurs whenever a party receives a benefit conferred by another under circumstances in which it would be inequitable or unjust to retain the benefit without payment of its value.

104. Here, at all relevant times, Plaintiff and Nevada Class Members conferred a benefit on Defendant by providing hours of valuable legal-support services—including services performed during unpaid meal periods, during Boot Time, and during overtime hours—without full or adequate compensation. Defendant appreciated, accepted, and retained the benefit of those services with knowledge that the work was being performed.

105. Defendant has been unjustly enriched by retaining the value of the uncompensated services of Plaintiff and Nevada Class Members, and it would be inequitable for Defendant to retain the benefit of those services without payment of reasonable compensation to Plaintiff and Nevada Class Members.

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

106. Plaintiff and Nevada Class Members lack an adequate remedy at law to the extent any of their statutory wage claims are found not to govern the work at issue.

107. WHEREFORE, Plaintiff and Nevada Class Members seek restitution and disgorgement of all amounts by which Defendant was unjustly enriched as a result of the uncompensated benefits conferred upon, accepted, and retained by Defendant, in an amount to be determined at trial, together with attorneys' fees, costs, and interest as provided by law.

**SIXTH CAUSE OF ACTION**

***Quantum Meruit***

**(On Behalf of Plaintiff and the Nevada Class, in the Alternative)**

108. Plaintiff incorporates and realleges all paragraphs above.

109. In the alternative, and only if the Court finds that no enforceable contract governs the compensation owed for the work at issue, Plaintiff asserts this claim for quantum meruit on behalf of herself and the Nevada Class.

110. Quantum meruit is an equitable remedy providing for compensation to employees in the absence of an enforceable contract. Under the equitable remedy of quantum meruit, a person who renders services to another party at that party's request, or for that party's benefit, is entitled to recover the reasonable value of the services rendered.

111. Even if nothing is said between the parties regarding compensation for such services, Nevada law will imply a contract requiring payment of reasonable compensation to the person performing the services.

112. Here, Plaintiff and Nevada Class Members performed valuable legal-support services for Defendant—including services performed during unpaid meal periods, during Boot Time, and during overtime hours—at Defendant's request and for Defendant's benefit, with the reasonable expectation of compensation. Defendant accepted and benefited from those services but failed to fully compensate Plaintiff and Nevada Class Members for the reasonable value of the services rendered.

113. Plaintiff and Nevada Class Members lack an adequate remedy at law to the extent any of their statutory wage claims are found not to govern the work at issue.

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

114. WHEREFORE, Plaintiff and Nevada Class Members seek recovery in quantum meruit for the reasonable value of all services rendered to Defendant that were never paid for, less the compensation actually received, in an amount to be determined at trial, together with attorneys' fees, costs, and interest as provided by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Nevada Class, the FLSA Collective, and all others similarly situated, prays for relief against Defendant as follows:

1. For an order certifying this action as a class action under Federal Rule of Civil Procedure 23 on behalf of the Nevada Class;
2. For an order conditionally certifying this action as a collective action under the FLSA, 29 U.S.C. § 216(b), on behalf of the FLSA Collective, and authorizing notice to all putative FLSA Collective Members;
3. For an order appointing Plaintiff as class and collective representative and her counsel as class and collective counsel for the Nevada Class and the FLSA Collective;
4. For a declaration that Defendant violated the FLSA, 29 U.S.C. § 207, by failing to pay Plaintiff and FLSA Collective Members overtime compensation due to their misclassification as exempt employees;
5. For a declaration that Defendant violated NRS 608.016, 608.018, and 608.020-050 by failing to pay Plaintiff and Nevada Class Members for all hours worked and overtime, and by failing to timely pay all wages due and owing at separation;
6. For damages according to proof at the regular rate of pay under applicable state and federal law for all hours worked but not compensated, including time worked through meal periods and Boot Time;
7. For damages according to proof for overtime compensation at one and one-half times the regular rate of pay under applicable state and federal law for all hours worked over 40 in a workweek;
8. For liquidated damages in an amount equal to the unpaid overtime compensation pursuant to 29 U.S.C. § 216(b);

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

9. For up to 30 days' additional wages as waiting-time penalties, and an employee lien, pursuant to NRS 608.040 and 608.050;
10. For restitution and disgorgement of all amounts by which Defendant was unjustly enriched, and for the reasonable value of services rendered in quantum meruit, in amounts to be proven at trial;
11. For reasonable attorneys' fees authorized by statute, common law, or equity, including under 29 U.S.C. § 216(b) and NRS 608.140;
12. For costs of suit incurred herein;
13. For pre-judgment and post-judgment interest at the maximum legal rate; and
14. For such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues and claims so triable in this action.

DATED: June 12, 2026

**RAFII & ASSOCIATES, P.C.**

*/s/ Jason Kuller*
Jason Kuller
Of Counsel
*Attorneys for Plaintiffs*

# EXHIBIT A

EXHIBIT A

# CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT

Print Name: Mercedes Ruiz

1. I hereby consent to be a party plaintiff in a collective action lawsuit against **ATKINSON WATKINS & HOFFMAN LLP, d/b/a BATTLE BORN INJURY LAWYERS**, and/or any other named defendants ("Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

2. I understand this lawsuit seeks to recover unpaid minimum wages, overtime compensation, liquidated damages, attorneys' fees, costs, and other relief available pursuant to the FLSA.

3. I designate the law firm of RAFII & ASSOCIATES, P.C., and any other attorneys with whom they may associate, as my attorneys in this lawsuit to prosecute my FLSA and related claims.

4. I understand I have the right to pursue my claims individually on my own behalf. I agree to serve as the Class Representative if the Court so approves. If someone else serves as Class Representative, then I designate such Class Representative(s) as my agents to make decisions on my behalf concerning the litigation and all other matters pertaining to this lawsuit.

5. I authorize the law firm and attorneys at RAFII & ASSOCIATES, P.C., to use this consent to file my claims in a separate lawsuit, class/collective action, or arbitration against Defendants.

Signed by Mercedes Ruiz
I approve this document
06/12/2026 23:57 UTC

Signature: ______________________ Date: 06/12/2026

The signed document can be validated at https://app.vinesign.com/Verify